IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL CASE NO. |
| v. | 1:10-CR-00189-TWT-LTW |
| MICHAEL GLYNN ELLIS, JR., | |
| Defendant. | |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL**

Pending before the court is Defendant's Motion to Suppress and Defendant's Motion to Suppress Fruits of Search from Residence of Michael Ellis and Motion to Suppress Defendant's Statements. Docket Entries [9, 13]. The Government has filed a response in opposition to Defendant's motions. Docket Entry [33]. For the reasons more fully discussed below, this Court **RECOMMENDS** that Defendant's Motion to Suppress and Defendant's Motion to Suppress Fruits of Search from Residence of Michael Ellis and Motion to Suppress Defendant's Statements be **DENIED**. Docket Entries [9, 13],

**BACKGROUND FACTS**

On May 4, 2010, Defendant Michael Ellis ("Defendant") was arrested on a federal indictment charging him with violating Title 18, United States Code, Section 2252(a)(2). Docket Entry [1]. On December 4, 2007, a federal grand jury sitting in the Northern District of Georgia returned an indictment against Defendant, charging him with

knowingly receiving child pornography in violation of Title 18, United States Code, Section 2252(a)(2) and knowingly possessing child pornography in violation of Title 18, United States Code, Section 2252(a)(4)(B).  Docket Entry [1].

Federal Bureau of Investigation (FBI) Task Force Officer (TFO) John Robison received information that on April 9, 2008, FBI TFO Joseph Ahmed, while acting in an undercover capacity from the Buffalo Field Office, signed on to an internet peer-to-peer file sharing program known as Limewire. (Transcript of Proceedings, October 21, 2010 ("Tr.") at 5, Docket Entry [25]).  While on Limewire, TFO Ahmed came across an individual who was in the process of downloading seven images of child pornography, one of which was completely downloaded, and sharing those images.  (Tr. at 5 ).  TFO Ahmed was able to obtain the IP address where the child pornography images were being downloaded. (Tr. at 5).  Using the IP address and on further investigation, TFO Ahmed determined that Comcast was the internet service provider.  (Tr. at 5).  TFO Ahmed subpoenaed Comcast for information regarding the user of the IP address. (Tr. at 5, 26-27, Gov't's Ex. 4). Comcast returned information which indicated the subscriber utilizing that IP address was an address in Alpharetta, Georgia. (Tr. at 6). TFO Robison conducted a follow-up investigation and confirmed that the individual residing at the Alpharetta address was Defendant Michael Ellis. (Tr. at 6 ).  Using the information provided by TFO Ahmed, the street address where the computer was located, and confirming the name of the resident living in the home, TFO Robison obtained a search warrant for the home.  (Tr. at 6).

On January 27, 2009, Janet King, a United States Magistrate Judge, issued a

2

federal search warrant which was executed on Defendant's residence by TFO Robison and FBI Special Agent ("SA") Joan Cronier. (Tr. at 6-7,77). When the agents arrived at the residence sometime after 6:00 a.m.,[1] the Defendant's parents were present and the Defendant was not present. (Tr. at 7, 79-80). SA Cronier explained to Defendant's parents why they were present at the residence by informing them that they were there because of the internet and child pornography. (Tr. at 79). Defendant's parents told the agents that their son lived in the basement and was at work. (R. at 80). The agents understood that the Defendant and his parents were the only individuals residing at the residence. (Tr. at 80). SA Cronier suggested that the Defendant should be called and "maybe, you know, have him come home and we could talk to him about it and see if we could resolve the situation." (Tr. at 80). Catherine Ellis, the Defendant's mother, called him on the telephone and started to cry resulting in her inability to speak clearly. (Tr. at 80). Mrs. Ellis handed the phone to SA Cronier who introduced herself to Defendant, told him why they were at his home, and asked him "would he want to come home, was he able to get out of work and come home and see if we could resolve the situation." (Tr. at 81). Defendant was not threatened in any manner nor promised anything or required to return home from work. (Tr. at 81).

When Defendant arrived at home, TFO Robison explained to Defendant that they were there because the agents received information that child pornography had been shared from a peer-to-peer program, the IP address led back to Defendant's home, and the officers were there to take the computers to do a forensic examination on them. (Tr.

---

[1] Michael Ellis, Sr., Defendant's father, testified that the agents arrived at the house at 5:30 a.m. (Tr. at 99).

3

at 22). Defendant was also asked if he was willing to talk to the agents because they would like to ask him a few questions. (Tr. at 22). Defendant appeared to understand and was interviewed by TFO Robison and SA Cronier. (Tr. at 22). Defendant was not promised anything, threatened or forced to speak to the agents. (Tr. at 22-23). Defendant allegedly admitted using well-known child pornography search terms and that he had child pornography on his computer. (Tr. at 24). Defendant was not advised of his constitutional rights. (Tr. at 22). As a result of the search, a computer located in Defendant's bedroom was seized and examined by the FBI. (Tr. at 23). Child pornography was found stored on Defendant's computer. (Tr. at 8-9).

## LEGAL ANALYSIS

Defendant presents six arguments to support his contention that the search at issue in this case and any statements provided were illegal. First, Defendant argues the search was illegal because it was conducted on a date and at a time not authorized by the warrant. Second, the search was illegal because the agent failed to leave a copy of the warrant at Defendant's residence at the time the search was conducted. Third, the search was unconstitutional because the search party destroyed Defendant's personal property during the course of the search. Fourth, the search was unconstitutional because no probable cause existed to tie the relevant internet protocol (IP) address to Defendant's residence. Fifth, the search warrant was improperly executed because there was no effort to seize all computers in the home. Sixth, statements made by Defendant to law enforcement officers were the result of an illegal interrogation that was not preceded by Miranda warnings. Responding in opposition to Defendants' Motions, the Government

argues evidence seized in this case should not be suppressed because even though there may have been technical irregularities in the search warrant affidavit, the agents had probable cause to search Defendant's residence, the execution of the search and seizure of items was legal, and Defendant voluntarily returned home and voluntarily admitted downloading child pornography. This Court finds that the search and seizure at issue was constitutionally permissible.

1. The Date and Time of the Search Warrant

Defendant argues the search of his residence was illegal because it was conducted at a date and time not authorized by the warrant. The Government concedes that the search was conducted after the date provided in the search warrant but argues the date was a typographical error. The Government contends the execution of the search timely commenced after 6:00 a.m.

The Fourth Amendment does not specify that search warrants contain expiration dates. United States v. Gerber, 994 F.2d 1556, 1559 (11th Cir. 1993). While the amendment requires an "[o]ath or affirmation . . . particularly describing the place to be searched, and the persons or things to be seized," it contains no requirements about when the search or seizure is to occur or the duration. U.S. Const. amend. IV (emphasis added). Id. In contrast, Federal Rule of Criminal Procedure 41 provides that a duly issued search warrant shall be executed "within a specified period of time not to exceed 10 days." Fed. R. Crim. P. 41(e)(2)(A)(i).[2]

---

[2] Fed. R. Crim. P. 41(e)(2)(A)(i) has since been amended to provide that a search warrant must be executed within a specified time not to exceed 14 days.

Defendant correctly notes that the search warrant, issued by Judge King on January 27, 2009, directed the agents to search Defendant's on or before January 27, 2009, and that the search must commence no earlier than 6:00 a.m. Although the search of Defendant's residence occurred on January 29, 2009, two days after the search warrant was issued and signed, there is no evidence that Judge King either intended the search warrant to be executed that day or to reduce the ten days then provided by the Fed. R. Crim. P. 41(e)(2)(A)(I). The fact that the issuance and execution date on the face of the search warrant are the same leads this Court to believe that Judge King simply committed a clerical error when she ordered that the search be conducted on the very day that she issued the warrant. Even if Judge King did not make a clerical error, there is no showing that the agents either intentionally or deliberately disregarded the January 27, 2009 expiration date or that the two-day delay prejudiced the Defendant in any way.

In <u>United States v. Garner</u>, 398 F. App'x 380, 382 (10th Cir. 2010), a case similar to the instant action, a magistrate judge noted on a search warrant that agents were commanded to search "on or before December 5, 2008," the same date the warrant was presented and issued. <u>Id</u>. The warrant was executed five days later on December 10, 2008, and illegal firearms and ammunition were seized. <u>Id</u>. Garner moved to suppress the evidence seized arguing the agent's failure to execute the warrant on or before December 5, 2008, as commanded by the warrant, rendered the warrant void and the agent's search warrantless, in violation of the Fourth Amendment. <u>Id</u>. The district court

6

denied the motion to suppress finding that the warrrant's expiration date was a "clerical error." Id.  On appeal, the Tenth Circuit Court of Appeals held that even assuming that the warrant's command that it be executed on same day it was issued was not a clerical error, suppression of evidence was not required, absent a showing that the agents' delay was prejudicial, the delay had some effect on probable cause for search, or agents had acted intentionally and with deliberate disregard of warrant's expiration date.  Id.

In this case, even if the January 27, 2009 execution date for the search warrant was not a clerical error, Defendant failed to demonstrate that the execution of the expired warrant was prejudicial or that it was done intentionally and with deliberate disregard of the warrant's expiration date.  Moreover, the warrant was executed within the ten-day requirement of Rule 41, and there is no evidence that the execution on January 27, 2009, had any effect on the Government's probable cause to search Defendant's computer. While the Eleventh Circuit has not addressed this issue directly, the Eleventh Circuit has adopted a standard for analyzing alleged violation of Rule 41 relating to search warrants:

> [U]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

Gerber, 994 F.2d at 1560. Although this Court is dealing with a violation of the warrant itself, rather than a violation of Rule 41 per se, this Court finds the same analysis should apply to technical violations of the warrant.  If non-prejudicial and unintentional

7

violations of Rule 41 do not result in suppression, then *fortiori* technical violations of the warrant itself compels the same result. This reasoning is consistent with the Tenth Circuit's reasoning in Garner. Accordingly, Defendant's motion to suppress premised on the ground that the warrant was not executed on the date provided by the search warrant should be denied.

Defendant also argues that the search of his residence was illegal because the warrant required it to be executed between 6:00 a.m. and 10:00 p.m. Defendant's parents testified that the agents arrived at their home at 5:30 a.m. (Tr. at 99, 112-13, 127). In contrast, the agents testified that they had a 6:00 a.m. "plan meeting" at a Kroger near Defendant's house before they executed the search warrant some time between 6:15 and 6:30 a.m. (Tr. at 16, 41-43, 78). This Court finds the agents' testimony to be more credible than the Defendant's parents who arguably can be considered biased because of their relationship to the Defendant. Assuming without deciding that the agents arrived at the residence thirty minutes earlier than the time indicated on the search warrant, no evidence was presented showing that the agents intended to violate Rule 41[3] or that Defendant was prejudiced by the agents' early arrival. Accordingly, suppression is not warranted on this issue.

---

[3] Fed. R. Crim. P. 41(e)(2)(A)(ii) provides that an officer must execute the warrant during the daytime unless the issuing judge for good cause expressly authorizes execution at another time. The rule defines "daytime" as the hours between 6:00 a.m. and 10:00 p.m.

2. <u>The Failure to Leave a Copy of the Warrant</u>

Defendant also argues the search of his residence was illegal because the agents failed to leave a copy of the search warrant at the time the search was conducted. In response, the Government contends that Rule 41 does not require that a copy of the warrant be left at the scene at the time the search is conducted.

Fed. R. Crim. P. 41(f)(1)(C) provides:

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

Thus, Rule 41 does not require that a copy of the warrant be left at the same time as the search.

During the execution of the search warrant, Defendant and his parents were present, the agents explained to them what personal property was being removed from the home pursuant to the warrant, and they were provided with a FBI Receipt for Property Received/Returned/Released and Seized.[4] (Tr. at 17, Gov't's Ex. 3). The property receipt lists the items seized from Defendant's bedroom. (Gov't's Ex. 3). TFO Robison testified that either later on that afternoon of the search or the next day, he realized that he had forgotten to leave the search warrant and returned to Defendant's

---

[4] A box entitled "seized" is checked on the FBI property receipt. (Gov't's Ex. #3).

9

residence to leave the warrant.[5]  (Tr. at 19-20).  When TFO Robison returned to Defendant's residence, he knocked on the door and when no one answered, he left the search warrant in an unlocked car in the driveway. (Tr. at 20).  TFO Robison also left a message at the residence on the answering machine informing Defendant and his family that TFO Robison left the search warrant in the car in the drive way. (Tr. at 20). Defendant's father called TFO Robison and confirmed receipt of the search warrant and asked questions regarding what was going to happen from this point on in the investigation.  (Tr. at 20).

Based on the facts of this case, absent evidence that Defendant was prejudiced or that TFO Robison's intentionally failed to leave a copy of the search warrant immediately after the search and seizure, this Court finds that TFO Robison's technical violation of Rule 41 does not warrant suppression of the evidence.  After recognizing his failure to leave a copy of the warrant immediately after the search and seizure, TFO Robison attempted to comply with Rule 41 by returning to the residence and leaving a copy of the search warrant.  This Court finds that because TFO Robison initially provided Defendant's parents with a receipt for the items seized and later provided a copy of the warrant, TFO Robison's initial failure to leave a search warrant was at best, minimum compliance with Rule 41, and at worst, a technical irregularity.  Nothing in TFO Robison's actions should void an otherwise valid search warrant.

---

[5] Based on the Court's review of a undated message TFO Robison left on an answering machine at Defendant's residence, TFO Robison may have left the warrant a couple of days after the search. See Def. Ex. 3.

    3.    <u>Destruction of Defendant's Personal Property</u>

Defendant argues that evidence seized in this case should be suppressed because the officers intentionally destroyed a number of items that the officers claimed were "drug-related."  Specifically, Defendant's father testified that the officers destroyed Middle Eastern "Hookas"[6] valued at $1,000.  In contrast to Defendant's father's testimony, TFO Robison testified that when he completed Defendant's interview, he walked through the upstairs and downstairs of the house while the search team was finishing up and did not see any indication of any destroyed or damaged personal property. (Tr. at 20-21).  TFO Robison also testified that the first time he was informed of any allegations regarding destruction of personal property at Defendant's residence was when Defendant's motion to suppress was filed.  (Tr. at 21).  As previously discussed, this Court finds TFO Robison's testimony to be credible.  Accordingly, the evidence seized in this case should not be suppressed based on unsubstantiated allegations that the agents destroyed personal property.

    4.    <u>Probable Cause for the Search Warrant</u>

Defendant argues no probable cause existed to tie the relevant internet protocol (IP) address to Defendant's residence because the agents explained in the affidavit in support of the search warrant application that the IP address on the computer utilized to download child pornography had been linked to Defendant's parents' residence on

---

[6] A hooka or hookah, also known as a waterpipe, is a single or multi-stemmed (often glass-based) instrument used for smoking. http://en.wikipedia.org/wiki/Hookah

March 10, 2008, which was a month prior to the date the pornography was discovered. In support, Defendant points out that because computer IP addresses change, a computer associated with one IP address "on one day, may change on a routine basis and that IP address will not be associated with that computer (or location) the next day, or the next month." (Def.'s Br. 8). The Government concedes that Agent Robison's affidavit submitted to Judge King incorrectly indicated that "on April 10, 2008, TFO Ahmed transmitted an administrative subpoena to Comcast for information regarding the user of IP address 98.192.11.2 on **March 10, 2008**, between 2:13 PM an d 2:14 PM (EDT)." (Tr. at 25-29) (emphasis supplied). TFO Robison admitted that the **March 10, 2008** date listed in his affidavit is incorrect, a typographical error, and bears no significance in the investigation. (Tr. at 29-30) (emphasis supplied). It is clear, however, that the administrative subpoena transmitted by TFO Ahmed to Comcast on April 10, 2008, did, in fact, request that Comcast "[p]rovide all customer information or subscriber account information for any accounts with IP 98.192.11.2 on **04/09/2008** 2:13 pm to 2:14 pm EDT." (Tr. at 25-27, 30-31, Gov't's Ex. 4) (emphasis supplied). TFO Robison also testified that when he submitted his affidavit to Judge King, he was aware that the administrative subpoena issued to Comcast correctly requested subscriber information associated with the undercover session in which the child pornography was downloaded on April 9, 2008.[7] (Tr. at 30-31). TFO Robison further testified that when he submitted

---

[7] The Court notes that the correct date, April 9, 2008, is provided in at least two places in the search warrant. (Gov't's Ex. 1).

12

his affidavit to Judge King he believed that he had probable cause to search Defendant's house. (Tr. at 31). This Court finds that the March 10, 2008 date in the affidavit to be a typographical error that does not warrant exclusion of the evidence seized from Defendant's residence. This Court on reviewing the affidavit in its entirety in conjunction with TFO Robison's testimony, finds that despite the typographical error, TFO Robison reasonably relied on the warrant's validity.

In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective. <u>Id.</u> at 905, 922 (explaining that where an officer's reliance on a warrant is objectively reasonable, no additional deterrent effect will be achieved by excluding from evidence the fruits of that search); <u>see also</u> <u>United States v. Martin</u>, 297 F.3d 1308, 1313 (11th Cir. 2002) (describing the <u>Leon</u> good faith exception as providing that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause"). <u>Leon</u> and its progeny, however, have identified four situations where a law enforcement officer's reliance on a warrant is not reasonable and cannot justify application of the exception. <u>See</u> <u>United States v. Taxacher</u>, 902 F.2d 867, 871 (11th Cir. 1990). In particular, the exclusionary rule applies when (1) the information in the affidavit was known by the affiant to be false and to have misled the issuing judge, (2) the issuing judge wholly abandoned his judicial role, serving merely as a rubber stamp for law enforcement, (3)

13

the affidavit is so lacking in indicia of probable cause so as to render reliance on it entirely unreasonable, and (4) the warrant was so facially deficient that the executing agent could not have believed it to be valid.  See Leon, 468 U.S. at 923.

This Court perceives no evidence in the record supporting the notion that agents did not seize the evidence in reasonable, good faith reliance on the search warrant. Indeed, Defendant makes no contention to the contrary.  Even assuming *arguendo* that the warrant affidavit did not establish probable cause, this Court's review of the warrant affidavit reveals that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  Similarly, this Court cannot conclude that the warrant affidavit was so facially deficient that executing agents could not have believed it to be valid.  Further, the record does not support any assertion—which again, Defendant does not make—that the issuing judge abandoned her judicial role or the information in the affidavit was known by the affiant to be false and to have misled the issuing judge.  As a result, this Court finds that even if the search warrant affidavit was not supported by probable cause, suppression would be inappropriate under Leon and its progeny.

     5.    Execution of the Search Warrant

Defendant contends that evidence in the case should be suppressed on the grounds that the agents failed to properly execute the search warrant because no effort was made to seize all computers as required by the warrant. In response, the Government asserts that the computer-related evidence it seeks to introduce in this trial was obtained during

14

a forensic examination of one computer – a Compaq Presario computer located in Defendant's bedroom, the computer which Defendant Ellis admitted he used to receive child pornography. (Tr. at 23-25, Gov't's Ex. 3). This Court is unable to find any reason why evidence seized in this case should be suppressed simply because the agents exercised their discretion, seized the only computers they reasonably believed may contain child pornography, and left computers that may have belonged to Defendant's parents or others. The warrant in this case described items to be seized with sufficiently precise language so that the agents knew how to separate items properly subject to seizure from irrelevant items. (Gov't's Ex. 1). After Defendant told the agents that his bedroom and computer(s) were in the basement and admitted to downloading child pornography on the computer(s), the agents reasonably seized those computers either in the basement or otherwise identified by Defendant.[8] (Tr. at 23-24). This Court finds no basis to exclude the seized evidence.

   6.   Defendant's Statements

Lastly, Defendant argues his statements should be suppressed because he was in custody for <u>Miranda</u> purposes and the agents failed to provide him with his <u>Miranda</u> warnings. Defendant contends that because he was directed to return home by the agents, confronted by eight armed agents in his house who were executing a search

---

[8] Based on the Court's review of the FBI's Receipt for Property Received/Returned/Release/Seized, more than one computer was seized from Defendant's residence. (Gov't's Ex. 3). In addition to other items seized, one computer appears to have been seized from a blue room and another from a green room. (Gov't's Ex. 3).

15

warrant, separated from his parents during the interrogation, directed to sit in the dining room with two agents, and confronted with incriminating evidence that he had committed a felony, the circumstances amounted to him being in custody. In response, the Government argues that the Defendant was not in custody for purposes of Miranda.

The prosecution cannot introduce a defendant's statements made in response to custodial interrogation without first informing the defendant of his rights under Miranda. Miranda v. Arizona, 384 U.S. 436, 444, 476 (1966). In United States v. Castro, 723 F.2d 1527 (11th Cir. 1984) the Eleventh Circuit held that before Miranda warnings are required, "it must be established that the subject was both 'in custody' and under 'interrogation' by police officers." Castro, 723 F.2d at 1530. To determine whether a suspect is "in custody," the Supreme Court has set out two distinct inquiries: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995) (footnote omitted). The court must then determine whether the suspect was subjected to a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. (quotations omitted). "[C]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home." United States v. Brown, 441 F.3d 1330, 1348 (11th Cir. 2006) (quotation and alteration omitted), cert. denied, -- U.S. --,127 S.Ct. 1149 (2007); see also United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004)

16

(noting that "absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial"). Other relevant factors to determine custody include whether the suspect was physically restrained or told he was under arrest. See United States v. Phillips, 812 F.2d 1355, 1362 (11th Cir. 1987) (per curiam) (concluding that a suspect, who was neither arrested nor told that he was under arrest, was "not in custody for the purposes of Miranda").

Here, Agent Cronier testified that she suggested someone call Defendant and have him come home to "resolve the situation." (Tr. at 80). When Defendant's mother called Defendant and began to cry, Agent Cronier took the telephone from Defendant's mother and asked him "if he was able to get out of work and come home and see if we could resolve the situation." (Tr. at 80-81). Agent Cronier provided credible testimony that Defendant was not promised, threatened, or required to come home. (Tr. at 81). Indeed Defendant testified that he was not forced to return home and that he did so voluntarily. (Tr. at 96). After Defendant arrived, Agent Cronier met him, told him why they were at his residence, and repeatedly stated that they were not there to arrest anyone. (Tr. at 81). Defendant also testified that he voluntarily spoke to the agents. (Tr. 97). At the time that Defendant was questioned, he was in a familiar setting (his home) and he was neither physically restrained nor told he was under arrest. Moreover, nothing in the record indicates that there was any restraint on Defendant's freedom of movement of the degree associated with a formal arrest. Accordingly, Defendant was not in custody for the purposes of Miranda, therefore his statements should not be suppressed.

17

## **CONCLUSION**

Based on the foregoing, this Court **RECOMMENDS** that Defendant's Motion to Suppress and Defendant's Motion to Suppress Fruits of Search from Residence of Michael Ellis and Motion to Suppress Defendant's Statements be **DENIED**. Docket Entries [9, 13]. There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this case is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED** and **REPORTED AND RECOMMENDED** this **4th** day of **MARCH, 2011**.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. |
| v. | 1:10-CR-00189-TWT-LTW |
| MICHAEL GLYNN ELLIS, JR., | |
| Defendant. | |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h)(1)(F), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Act.**

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible

AO 72A
(Rev.8/82)

for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this **4th** day of **MARCH**, 2011.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)